# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT WINCHESTER

LARRY SHANE REDMON,     )
          )
     Plaintiff,     )
          )     Case No. 4:18-cv-38
v.          )
          )     Judge Christopher H. Steger
YOROZU AUTOMOTIVE     )
TENNESSEE, INC.,     )
          )
     Defendant.     )

## MEMORANDUM OPINION

### I.    Introduction

Plaintiff Larry Shane Redmon ("Redmon") sued Defendant Yorozu Automotive Tennessee, Inc. ("Yorozu"), alleging that Yorozu employees discriminated against Redmon due to his sexual orientation and retaliated against him for complaining of such discrimination [*See* Doc. 1]. Yorozu responded with the present motion to dismiss [Doc. 11], contending that Redmon's complaint fails to state a claim upon which relief can be granted. More specifically, Yorozu contends that the federal statute upon which Redmon bases his claim, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* does not protect employees against discrimination and retaliation based upon sexual orientation.

### II.    Facts[1]

Redmon, who self-identifies as gay, began working as a supervisor at Yorozu in March 2017. Tyson Mosier, another supervisor, was responsible for training Redmon and three other newly-hired supervisors. Redmon alleges that, during his training, Mosier avoided him and took

---

[1] At the motion to dismiss stage, the Court accepts the plaintiff's allegations as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

actions to embarrass him. All four new supervisors were trained for two weeks; however, Redmon received only four hours of training each day while the other three supervisors received eight hours of training each day. Redmon complained to Human Resources about Mosier's conduct.

A few months after he began working for Yorozu, two of Redmon's colleagues told him that he had better "watch himself" because Mosier hated him and management was "out to get him." Another colleague told Redmon that he should "watch his back" because upper management was going to replace him with one of the new supervisors. This same colleague told Redmon that management, including Mosier, were calling him "Sugar Shane" and "fag" when Redmon was not around. Redmon reported these comments to HR Generalist Todd Sauer in Human Resources. Sauer assured Redmon that he would not be fired.

Redmon also reported Mosier's inappropriate comments and behavior to his direct supervisor, Manager Bobby Grissom. Grissom responded that he was aware that Mosier was giving Redmon a hard time, but that Redmon need not worry about his job because Grissom had other supervisors that he wanted to get rid of before Redmon. Grissom acknowledged that Redmon was gay and volunteered that his own sister was gay. He then stated that he was raised in church and could not understand why people were gay. Grissom also commented that Redmon was a good-looking guy, and it was okay that he was gay because it left more pretty girls for the rest of them. Grissom assured Redmon that he would investigate his complaints; however, he never conducted such an investigation.

On the same day that Redmon had this conversation with Bobby Grissom, Redmon was called into a meeting by two other managers, Klent Nunley and Steve Moore. During that meeting, Nunley and Moore coerced Redmon into falsifying quality-and-safety control audits. They also suggested to Redmon that Mosier would back down if Redmon would stand up to him. Redmon

later received a disciplinary write-up[2] and initiated a conversation with Grissom to discuss it. Grissom became angry and told Redmon, "you can't use being gay all the time" as an excuse.

On August 1, 2017, Redmon met with Manager Bobby Grissom, HR Manager Andy Lloyd and HR Generalist Todd Sauer. During that meeting, Redmon complained to them about being harassed and retaliated against because of his sexual orientation. The following day, Redmon met with Tanya Martin in Human Resources. Martin advised Redmon that she "couldn't believe how bad the good ol' boys messed up," and that the "good ol' boys" thought Redmon would quit. Martin counseled Redmon to contact the EEOC. Redmon expressed fear that he would be fired if he did.

At the end of August 2017, Supervisor Tyson Mosier and Manager Steve Moore assumed responsibility for the area that Redmon had supervised. Redmon complained to Bobby Grissom about the fact that Steve Moore had encouraged Tyson Mosier to harass him.

On September 12, 2017, Yorozu terminated Redmon's employment in a layoff. The explanation offered to Redmon was that he was chosen for layoff because he had the least seniority. Redmon contends that there were at least three other supervisors with less seniority who were not chosen for layoff. Redmon claims that, following his termination, Yorozu provided false, negative job references in response to inquiries about him or, alternatively, Yorozu refused to provide any reference at all.

In September 2017, Redmon filed a charge of discrimination with the EEOC.[3] The EEOC issued a right-to-sue letter on March 23, 2018. Redmon then filed this case against Yorozu, alleging: (1) discrimination, retaliation, and harassment under Title VII and the Tennessee Human

---

[2] The write-up apparently had nothing to do with Redmon's "gender expression or sexual preference." [Doc. 1 at ¶ 36].
[3] Redmon filed his original charge on September 5, 2017, one week before he was laid off [Doc. 19-1], but later amended it on September 18, 2017, after his termination to include a statement that he was discharged from Yorozu on September 12, 2017 [Doc. 19-2].

Rights Act;[4] (2) negligent hiring and supervision; and (3) tortious interference with a business relationship. The Court has original federal-question jurisdiction over Redmon's Title VII claims[5] and discretionary supplemental jurisdiction over his state-law claims.[6]

Yorozu filed a motion to dismiss [Doc. 11] asserting that Redmon is not a member of a protected class under Title VII, and that the statute does not protect discrimination on account of sexual orientation. Yorozu also argues that Redmon's negligent hiring/supervision claim is barred by the Tennessee Workers' Compensation Act.[7] Yorozu further states that Redmon's post-employment retaliation claim should be dismissed for failure to exhaust the EEOC's prescribed administrative remedies. Finally, Yorozu asserts that Redmon's tortious interference claim is impermissible because it is simply a Title VII sexual-orientation discrimination claim in disguise.

## III. Analysis

### A. Standard of Review

Defendant has filed a motion to dismiss [Doc. 11] under Fed. R. Civ. P. 12(b)(6) asserting that the complaint fails to state a claim upon which relief can be granted. Such a motion to dismiss is meant to test the sufficiency of the complaint; it does not resolve the facts of the case. *Cox v. Shelby State Cmty. Coll.*, 48 F. App'x. 500, 503 (6th Cir. 2002); *Metz v. Supreme Court of Ohio*, 46 F. App'x. 228, 233 (6th Cir. 2002); *Thielen v. GMAC Mortg. Corp.*, 671 F. Supp. 2d 947, 950 (E.D. Mich. 2009). Defendants bear "the burden of showing that the plaintiff has failed to state a claim for relief." *Crugher v. Prelesnik*, 761 F.3d 610, 614 (6th Cir. 2014) (quoting *Directv, Inc. v.*

---

[4] Tenn. Code Ann. § 4-21-401, *et. seq.* Like Title VII, the THRA prohibits employment discrimination "because of . . . sex." Tenn. Code Ann. § 4-21-401(a)(1). THRA claims are analyzed in the same way as Title VII claims. *Lynch v. City of Jellico*, 205 S.W.3d 384, 399 (Tenn. 2006).

[5] 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the . . . laws . . . of the United States.").

[6] 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III . . . .").

[7] Tenn. Code Ann. § 50-6-108(a) (1999)

4

*Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). In determining whether a party has set forth a claim in his complaint upon which relief can be granted, all well-pleaded factual allegations contained in the complaint must be accepted as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). This tenet does not apply to legal conclusions set forth in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* More than "unadorned, the-defendant-unlawfully-harmed me accusation[s]" are required to state a claim. *Id.* "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 696 (brackets original) (quoting *Twombly,* 550 U.S at 557). The complaint must state "a plausible claim." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In determining whether a complaint states a plausible claim for relief, the Court may draw on its judicial experience and common sense. *Id.* at 679. Well-pleaded facts that permit the court to infer no more than a mere possibility of misconduct will not permit a complaint to survive a motion to dismiss. *Id.*

### B. Sexual orientation as a protected class under Title VII

In his Complaint [Doc. 1], four of Redmon's six causes of action allege Title VII discrimination and retaliation based on his sexual orientation, *to wit*: (1) count one—discrimination based on sexual orientation; (2) count two—retaliation for filing an EEOC charge complaining of discrimination and harassment; (3) count three—harassment based on sexual orientation; and (4) count six—retaliation which continued following the termination of Plaintiff's employment.

Federal law provides broad protection against discrimination and harassment based upon specific protected categories. "Title VII prohibits employers from 'discriminat[ing] against any

individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Equal Empl. Opportunity Comm'n. v. R.G. &. G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 571 (6th Cir. 2018) (quoting 42 U.S.C. § 2000e-2(a)(1)). "A plaintiff can establish a prima facie case of unlawful discrimination by presenting direct evidence of discriminatory intent." *Id.* (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) (brackets omitted). "A facially discriminatory employment policy or a corporate decision maker's express statement of a desire to remove employees in the protected group is direct evidence of discriminatory intent." *Id.* (citation and brackets omitted). "Once a plaintiff establishes that 'the prohibited classification played a motivating part in the adverse employment decision,' the employer then bears the burden of proving that it would have terminated the plaintiff 'even if it had not been motivated by impermissible discrimination.'" *Id.* (quoting *Nguyen*, 229 F.3d at 563).

Yorozu argues that Redmon's sexual orientation discrimination claims do not state a claim upon which relief can be granted because Title VII's prohibition against "sex" discrimination does not include a prohibition against "sexual orientation" discrimination. For Redmon to proceed under Title VII, he must be included in one of the protected classes identified in the statute. If sexual orientation is not a protected class under Title VII, then Redmon cannot proceed with respect to either a discrimination or a retaliation claim. *See Gilbert v. Country Music Ass'n, Inc.*, 432 Fed. Appx. 516, 520 (6th Cir. 2011) ("Because the conduct Gilbert opposed was not an 'unlawful employment practice,' 42 U.S.C. § 2000e–3(a), his retaliation claims must also fail.") (citing *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 520 (6th Cir. 2009).

Redmon does not dispute this reasoning; however, he asserts that, in *EEOC v. R.G. & G.R.*

*Harris Funeral Homes, Inc.*,[8] the Sixth Circuit effectively overruled prior precedent—with the net

effect that the Sixth Circuit would now include sexual orientation as a Title VII protected class.

### C. Overview of *Harris Funeral Homes*

In *Harris Funeral Homes*, Plaintiff "Aimee Stephens, a transgender woman who was

'assigned male at birth,' joined the funeral home as an apprentice on October 1, 2007 and served

as a Funeral Director/Embalmer at the funeral home from April 2008 until August 2013." 884 F.3d

at 567. The funeral home required directors and other public-facing employees to wear business

attire, so these employees were provided with an annual clothing stipend. *Id.* at 568. "During the

course of her employment at the funeral home, Stephens presented as a man and used her then-

legal name, William Anthony Beasley Stephens." *Id.* at 567. That changed in July 2013. *Id.*

On July 31, 2013, Stephens provided a letter to her supervisor stating that she had struggled

with gender identity her whole life and intended to have sex reassignment surgery. *Id.* at 568.

Stephen said the first step, however, was for her to "live and work full-time as a woman for one

year."[9] Stephens concluded that she would take vacation and return to work on August 26, 2013,

"as her true self, Amiee Australia Stephens, in appropriate business attire."[10]

After giving her supervisor the letter, the funeral home fired Stephens just before her trip.

*Id.* Stephens' supervisor later testified that he fired her because Stephens "was no longer going to

represent himself as a man. [Stephens] wanted to dress as a woman."[11] He also stated, under oath,

that he believed that "authorizing or paying for a male funeral director to wear the uniform for

---

[8] 884 F.3d 560 (6th Cir. 2018).
[9] *Id.* (internal quotation marks omitted) (citation omitted).
[10] *Id.* at 569 (internal quotation marks omitted) (citation omitted).
[11] *Id.* (internal quotation marks omitted) (citation omitted).

female funeral directors would render him complicit 'in supporting the idea that sex is a changeable social construct rather than an immutable God-given gift.'"[12]

Stephens filed a charge with the EEOC. After an investigation, the EEOC issued a right-to-sue letter, stating that "there was reasonable cause to believe that the funeral home 'discharged Stephens due to her sex and gender identity, female, in violation of Title VII[.]'" *Id.* (quoting Stephen's EEOC Determination). The EEOC and the funeral home were unable to resolve the dispute informally, so the EEOC sued. *Id.* The funeral home moved to dismiss, arguing that "transgender status is not a protected trait under Title VII . . . ." *Id.* The district court agreed. *Id.*

Though the Title VII claim was one of only several claims the EEOC asserted, the district court disposed of the entire case on summary judgment in favor of the funeral home. *Id.* at 570-71. The EEOC then appealed to the Sixth Circuit, and Stephens intervened. *Id.*

On appeal, the Sixth Circuit panel noted that "it is analytically impossible to fire an employee based on that employee's status as a transgender person without being motivated, at least in part, by the employee's sex." *Id.* at 575. In determining that Title VII protects transgender status, the panel considered "[t]he Seventh Circuit's method of 'isolating the significance of the plaintiff's sex to the employer's decision' to determine whether Title VII has been triggered . . . .", as set forth in *Hively v. Ivy Tech Community College of Indiana*, 853 F.3d 339, 345 (7th Cir. 2017).

### D.  The Seventh Circuit's comparative-method test in *Hively*

In *Hively*, the *en banc* Seventh Circuit considered the claim of an openly lesbian adjunct professor at Ivy Tech Community College. 853 F.3d at 341. Hively applied for several full-time positions but was repeatedly rejected. *Id.* Beyond not being hired for a full-time position, the college did not renew her part-time job. *Id.* She believed that Ivy Tech did not hire her and

---

[12] *Id.* (internal quotation marks omitted) (citation omitted).

Case 4:18-cv-00033-CHS   Document 21   Filed 03/29/19   Page 8 of 16   PageID #: 102
Case 4:18-cv-00033-CHS   Document 21   Filed 03/29/19   Page 8 of 16   PageID #: 102

terminated her part-time job due to her sexual orientation. As a result, she filed a charge with the EEOC and sued after receiving a right-to-sue letter. *Id.* Ivy Tech responded with a motion to dismiss for failure to state a claim, arguing that sexual orientation is not a protected class under Title VII. *Id.* The district court granted Ivy Tech's motion and dismissed Hively's case with prejudice. She appealed the court's decision. *Id.* The panel affirmed, so Hively requested *en banc* review. *See id.*

Sitting *en banc*, the Seventh Circuit considered "what it means to discriminate on the basis of sex, and in particular, whether actions taken on the basis of sexual orientation are a subset of actions taken on the basis of sex." *Id.* at 343. Answering in the affirmative, the Seventh Circuit adopted the "comparative method in which [courts] attempt to isolate the significance of the plaintiff's sex to the employer's decision: has [plaintiff] described a situation in which, holding all other things constant and changing only [their] sex, would [plaintiff] have been treated the same way?" *Id.* at 345. Applying the test to Hively, a woman, the Seventh Circuit analyzed the "situation in which Hively is a man, but everything else stays the same: in particular, the sex or gender of the partner." *Id.* In other words, the Seventh Circuit asked if Hivey, who is openly lesbian, would have been terminated or not hired had "she been a man married to a woman (or living with a woman, or dating a woman) and everything else had stayed the same . . . ." *Id.* If the answer to that question is "no," then Hively's claim for discrimination on the basis of sexual orientation is "paradigmatic sex discrimination." *Id.* Based on this analysis, the Seventh Circuit held that Ivy Tech disadvantaged Hively "because she is a woman." *Id.*

The court also reasoned that "[v]iewed through the lens of the gender non-conformity line of cases, Hively represents the ultimate case of failure to conform to the female stereotype . . . she is not heterosexual." *Id.* at 346.

The Seventh Circuit ultimately overruled prior precedent by concluding that "discrimination on the basis of sexual orientation is a form of sex discrimination" under Title VII. *Id.* at 341, 351.

**E.  The Sixth Circuit panel's application of *Hively* in *Harris Funeral Homes***

The Sixth Circuit, in *Harris Funeral Homes*, applied the "comparative method" test articulated in *Hively*, asking "whether Stephens [who was transitioning from male to female] would have been fired if Stephens had been a woman who sought to comply with the women's dress code." Concluding that the answer is "no," the court went on to say, [T]his, in and of itself, confirms that Stephens' sex impermissibly affected [the supervisor]'s decision to fire Stephens." *Id.* at 575. The panel reasoned that "[d]iscrimination on the basis of transgender and transitioning status is necessarily discrimination on the basis of sex, and thus the EEOC should have had the opportunity to prove that the funeral home violated Title VII by firing Stephens because she is transgender and transitioning from male to female." *Id.* at 571.

The Sixth Circuit panel also held that "discrimination against transgender persons necessarily implicates Title VII's proscriptions against sex stereotyping." *Id.* at 576. Relying upon its prior decision in *Smith v. City of Salem, Ohio*,[13] the panel noted that "a transgender person is someone who 'fails to act and/or identify with his or her gender'—i.e., someone who is inherently 'gender non-conforming.'" *Harris Funeral Homes*, 884 F.3d at 576 (quoting and citing *Smith*, 378 F.3d at 568, 575). The panel concluded that an employer "cannot discriminate on the basis of transgender status without imposing its stereotypical notions of how sexual organs and gender identity ought to align. There is no way to disaggregate discrimination on the basis of transgender

---

[13] 378 F.3d 566, 570 (6th Cir. 2004)

status from discrimination on the basis of gender non-conformity, and we see no reason to try." *Id.* at 576–77.

### F.  Application of *Harris Funeral Homes* to sexual-orientation claims

Redmon contends that the rationale embraced by the Sixth Circuit panel in *Harris Funeral Homes* leads to the conclusion that—in the Sixth Circuit—Title VII now protects against discrimination and retaliation on account of sexual orientation. Applying the *Hively* "comparative method" to his own situation, Redmon argues that if he "had been a woman who had a sexual preference for men, and all other factors stayed the same, he would not have been subject to the hostility, the termination, or the retaliation . . . ." [Doc. 18 at PageID #: 80]. Therefore, according to Redmon, with Title VII protection now in place, he has stated a claim for relief to overcome Yorozu's motion to dismiss.

Indeed, Redmon makes a valid point. It is difficult—perhaps impossible—to read the "comparative method" test adopted in *Harris Funeral Homes* and come to any conclusion but that sexual orientation should be included as a protected class under Title VII. In *Harris Funeral Homes*, the Sixth Circuit endorsed the concept that discrimination against a person for non-conformance to sexual stereotypes amounts to discrimination on the basis of "sex"—a protected category under Title VII. The "non-conformance" at issue was that an employee who exhibited primary and secondary sex characteristics of a male informed his employer that he was going to dress as a woman as he began transitioning from male to female. The sexual stereotype violated was that men should not wear skirts. *See, e.g.*, *Harris Funeral Homes*, 884 F.3d at 568 ("The Funeral Home requires its public-facing male employees to wear suits and ties and its public-facing female employees to wear skirts and business jackets.").

Applying the *Harris Funeral Homes* panel's reasoning to the instant case—which involves a gay male employee rather than a transgender employee—this Court would have to conclude that

sexual orientation is a protected class under Title VII. Indeed, if non-conformance to a sexual stereotype is tantamount to discrimination on the basis of sex, it would be hard to find a clearer, more concrete example of non-conformance to a sexual stereotype than same-sex attraction. In *Harris Funeral Homes*, the appellate court accepted the reality of a sexual stereotype that men are expected to dress one way and women another.[14] More so than choice of attire, sexual orientation is the ultimate sexual stereotype. It holds that men are supposed to be sexually attracted to women—and women are supposed to be attracted to men. When a person is treated differently because of his or her sexual orientation, such treatment is necessarily rooted in non-conformance to a sexual stereotype. So, if the rationale adopted in *Harris Funeral Homes* is controlling authority, this Court would be compelled to find that sexual orientation is a protected category under Title VII.

That said, the reasoning employed by the panel in *Harris Funeral Homes* seems to be in conflict with previous Sixth Circuit precedent. In *Vickers v. Fairfield Medical Center*,[15] the Sixth Circuit held that a plaintiff's sexual orientation cannot be used to claim Title VII discrimination on account of "sex." *Id.* Although *Vickers* was decided after the Supreme Court had recognized that Title VII protects claims based on sex stereotyping and same-sex sexual harassment,[16] the Sixth Circuit chose not to extend the concept of "sex stereotyping" to sexual orientation. Again, in *Kalich v. AT&T Mobility, LLC*,[17] the appellate court held, "harassment or discrimination based upon a person's sexual orientation cannot form the basis of a cognizable claim," noting that under Title VII, "sexual orientation is not a protected classification."

---

[14] The appellate court did not cite any empirical research to support that stereotype, and, to be clear, the court certainly did not endorse the stereotype. The court simply acknowledged that such a stereotype exists—at least in the jurisdiction over which it holds sway.

[15] 453 F.3d 757, 764 (6th Cir. 2006)

[16] *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 251-52 (1989); *Oncale v. Sundowner Offshore Servs. Inc.*, 523 U.S. 75, 80-81 (1998).

[17] 679 F.3d 464, 471 (6th Cir. 2012)

The Court acknowledges that the Sixth Circuit panel in *Harris Funeral Homes* offered an explanation as to why *Vickers* was not controlling: "*Vickers* does not control this case because *Vickers* concerned a different legal question . . . *Vickers* addressed only whether Title VII forbids sexual orientation discrimination, not discrimination against a transgender individual." *Harris Funeral Homes*, 884 F.3d at 579-80 (internal quotation marks omitted). This Court recognizes that sexual orientation and transgender are two entirely different categories. Respectfully, however, the *legal question* at issue applies equally to both categories of individuals. It simply requires a determination as to whether discrimination against an individual for non-conformance to sexual stereotypes constitutes "sex" discrimination under Title VII. Once that legal question is answered—and the panel did answer it in *Harris Funeral Homes*—the court is left to make a factual, rather than a legal determination. And, that factual determination is simply whether same-sex attraction constitutes non-conformance to a sexual stereotype that would be equivalent to the perceived non-conformance of a male wearing female clothing while transitioning to a female identity.

Adhering to the legal reasoning in *Harris Funeral Homes* would lead this Court to find that sexual orientation is a protected class under Title VII. But, reaching that conclusion would put the Court in conflict with the Sixth Circuit's holdings in *Vickers* and *Kalich* wherein the Sixth Circuit held that sexual orientation is not a protected class under Title VII. *See, e.g.*, *Grimsley v. Am. Showa, Inc.*, Case No. 3:17-cv-24, 2017 WL 3605440, at *4 (S.D. Ohio Aug. 21, 2017) (citing *Tumminello v. Father Ryan High School, Inc.*, 678 App'x 281, 285 n.1 (6th Cir. 2017)) ("*Vickers* remains controlling law until overruled by the Sixth Circuit sitting *en banc*, or until the United States Supreme Court issues a contrary ruling.").[18]

---

[18] In deciding *Vickers*, the Sixth Circuit relied, in part, upon the Second Circuit's *Dawson v. Brumble & Brumble*, 398 F.3d 211 (2d Cir. 2005) in finding that Title VII did not cover sexual orientation. *Vickers*, 453 F.3d at 763-64. Since

Case 4:18-cv-00033-CHS Document 21 Filed 03/29/19 Page 13 of 16 PageID #: 1075

The Court recognizes its responsibility to hew to Sixth Circuit precedent. Here, however, the principles set forth by the panel in *Harris Funeral Homes* are in conflict with *Vickers*, *Kalich* and their progeny. Hopefully, the appellate court will use this case—or one with similar facts—to reconcile *Harris Funeral Homes*, *Vickers* and *Kalich*. Until that guidance arrives, this Court will continue to rely upon the Sixth Circuit's precedent with respect to sexual orientation claims under Title VII. And, precedent currently in the Sixth Circuit states that sexual orientation is not recognized as a protected class under Title VII.[19]

Because the Sixth Circuit precedent holds that Title VII does not protect against sexual-orientation discrimination, Redmon's sexual-orientation discrimination and retaliation claims[20] under Title VII are **DISMISSED WITH PREJUDICE**.

### G. Supplemental jurisdiction over Redmon's state-law claims

Redmon also asserts two claims under Tennessee state law: (1) negligent hiring and supervision; and (2) tortious interference with a business relationship. [Doc. 1 at PageID #: 10-12]. Generally, where a federal court dismisses all federal claims, it will decline to exercise supplemental jurisdiction over a plaintiff's state-law claims. *See* 28 U.S.C. § 1367(c)(3); *see also Brown v. Cassens Transp. Co.*, 546 F.3d 347, 363 (6th Cir. 2008) ("[A] federal court should typically decline to exercise pendent jurisdiction over a plaintiff's state-law claims after dismissing the plaintiff's federal claims."). A federal district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state-law claims. *Smith v. Erie Cty. Sheriff's Dep't*, 603 F.

*Vickers*, however, the Second Circuit recently overruled *Dawson* in *Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 108 (2d Cir. 2018) and held that Title VII does protect against discrimination/retaliation on account of sexual orientation.

[19] The Court recognizes that other circuits have concluded that Title VII protects against sexual-orientation discrimination, but this court is bound by Sixth Circuit precedent. *Kindred Hosps. Ltd. P'ship v. McDonald*, 2008 WL 4165271, at *2 (W.D. Ky. Sept. 5, 2008) ("While it is certainly possible that courts in other circuits might reach different results in a similar situation, this Court is bound by Sixth Circuit law.").

[20] Because the Court is dismissing Count VI because Title VII does not cover discrimination based on sexual orientation, it need not consider Yorozu's contention that Redmon failed to exhaust his administrative remedies in asserting post-employment retaliation [*See* Doc. 12 at PageID #: 58-59].

App'x 414, 424 (6th Cir. 2015); *see Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003) ("Supplemental jurisdiction is a doctrine of discretion, not of . . . right."); *see also Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996) ("After a Rule 12(b)(6) dismissal, there is a strong presumption in favor of dismissing supplemental claims."). The presumption that a Rule 12(b)(6) dismissal of the federal claims precludes the exercise of supplemental jurisdiction over any remaining claims can only be overcome in "unusual circumstances." *Musson Theatrical, Inc.*, 89 F.3d at 1255. This case does not present the unusual circumstances necessary to overcome the strong presumption against this Court's exercise of supplemental jurisdiction. Accordingly, the Court declines to exercise supplemental jurisdiction over Redmon's state-law negligent-hiring-and-supervision claim as well as his tortious-interference-with-a-business-relationship claim. These claims will be **DISMISSED WITHOUT PREJUDICE**, and Plaintiff can elect to pursue them in state court**.**

## IV.    Conclusion

Courts across the United States have reached different conclusions when faced with the question as to whether Title VII prohibits discrimination on the basis of sexual orientation.[21] This Court, however, is bound to follow Sixth Circuit precedent which clearly holds that sexual orientation is not a protected class under Title VII. For that reason, Redmon is not entitled to Title

---

[21] *See, e.g.*, *Gilbert v. Country Music Ass'n, Inc.*, 432 Fed.App'x. 516, 519 (6th Cir. 2011) ("Under Title VII, 'sexual orientation is not a prohibited basis for discriminatory acts'") (quoting *Vickers*, 453 F.3d at 762); *Wittmer v. Phillips 66 Co.*, 915 F.3d 328, 330 (5th Cir. 2019) ("In *Blum v. Gulf Oil Corp.*, 597 F.2d 936 (5th Cir. 1979), we expressly held that Title VII does not prohibit discrimination on the basis of sexual orientation."); *Evans v. Georgia Reg'l Hosp.*, 850 F.3d 1248, 1255 (11th Cir.), *cert. denied*, 138 S. Ct. 557 (2017) ("Our binding precedent forecloses such an action" for discrimination because of sexual orientation); *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 259 (1st Cir. 1999) ("we regard it as settled law that . . . Title VII does not proscribe harassment simply because of sexual orientation"); *Prowel v. Wise Business Forms, Inc.*, 579 F.3d 285, 290 (3rd Cir. 2009) ("Congress chose not to include sexual orientation harassment in Title VII"); *Wrightson v. Pizza Hut of Am., Inc.*, 99 F.3d 138, 143 (4th Cir. 1996) ("Title VII does not afford a cause of action for discrimination based upon sexual orientation"); *Medina v. Income Support Div.*, 413 F.3d 1131, 1135 (10th Cir. 2005) ("Title VII's protections ... do not extend to harassment due to a person's sexuality"); *but see Hively*, 853 F.3d at 341 ("we conclude today that discrimination on the basis of sexual orientation is a form of sex discrimination"); *Zarda*, 883 F.3d at 108..

VII protection and he has failed to state a claim upon which relief can be granted. Yorozu's Motion to Dismiss [Doc. 11] is therefore **GRANTED**, and Redmon's claims are **DISMISSED WITH PREJUDICE.** Judgment will be entered in favor of Yorozu.

        **IT SO ORDERED.**

                                  /s/ *Christopher H. Steger*
                                  UNITED STATES MAGISTRATE JUDGE